UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

GLENN YOUNG #457113                   CIVIL ACTION NO. 15-cv-2759

VERSUS                                CHIEF JUDGE HICKS

N. BURL CAIN                          MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

A Caddo Parish jury, by a vote of 10 to 2, convicted Glenn Young ("Petitioner") of (1) possession of more than 28 grams but less than 200 grams of cocaine and (2) illegal use of weapons. Petitioner was adjudicated a third felony habitual offender and given a lengthy sentence. His convictions, along with a conviction of a co-defendant, were affirmed on appeal. State v. Wallace and Young, 71 So.3d 1142 (La. App. 2d Cir. 2011), writ denied, 79 So.3d 1026 (La. 2012). Petitioner also pursued a post-conviction application in the state courts.

Petitioner now seeks federal habeas corpus relief on several grounds. For the reasons that follow, it is recommended that his petition be denied. Petitioner's co-defendant, Bobby Wallace, raised several of the same claims presented in this petition, and a Report and Recommendation regarding them is pending in Wallace v. Cain, 15-cv-2823.

**Timeliness**

The state argues that the petition is untimely. The defense has potential merit, but there is some uncertainty. The facts and law applicable to the timeliness defense are outlined below, but it is recommended that the court address the claims on the merits. If a reviewing court were to find that a claim has habeas merit, the timeliness defense would need to be ruled upon.

The court has reviewed the timeliness defense under the rules explained in Dagenhart v. Goodwin, 2016 WL 4534909 (W.D. La. 2016). The one-year limitations period to file a federal petition was tolled, with 32 days remaining, when Petitioner filed his post-conviction application. The state trial court denied that application in May 2013, after which state law allowed Petitioner 30 days to seek a writ from the appellate court.

Petitioner did not take any action until more than one year later, in July 2014, when he filed a notice of intent to seek review before the state appellate court and asked the trial court to set an extended return date. Petitioner represented that his tardiness was because he did not receive a copy of the trial court's ruling until July 14, 2014. The trial court judge granted the extension. Tr. 1287-91. Co-defendant Wallace made similar claims of delayed notice in his case, although he claims he did not receive the trial court's ruling until August 18, 2014.

Petitioner thereafter proceeded on a timely basis in the state courts, and he filed his federal petition about 30 days after the Supreme Court of Louisiana denied a writ

application on his post-conviction application.[1]  His federal petition is untimely if his lack of timely action after the trial court's post-conviction ruling is deemed to have ceased the tolling effect during the several months of inactivity that followed.  If the post-conviction application had a tolling effect the entire time it was pending, then the federal petition is timely by a few days.

The tolling effect of a post-conviction application ordinarily ceases 30 days after a trial court's denial unless the prisoner files a timely application for review with the appellate court.  Melancon v. Kaylo, 259 F.3d 401 (5th Cir. 2001).  Petitioner did not do that, and more than the one-year limitation period expired before he renewed the process. In this case, however, the prisoner made an uncontested claim of lack of timely notice of the trial court's decision, and the state court granted an extension of the period to seek appellate relief.  Tr. 1287-91.  The granting of such an extension may, under certain circumstances, effectively keep the post-conviction application pending and thus continue to toll the federal limitations period.  Grillette v. Warden, 372 F.3d 765 (5th Cir. 2004). The undersigned does not necessarily find that the federal petition is timely, but the timeliness defense is less than certain.  The better course of action under the circumstances is to address the merits of the petition.

---

[1] The certificate of mailing at the end of Petitioner's federal petition certifies that it was placed in the federal mailbox at Angola to be scanned and filed electronically on November 26, 2015 (Thanksgiving).  It was electronically transmitted to the clerk of court the following Monday, November 30, 2015.

**Sufficiency of the Evidence**

    **A. The Evidence**

Marcus Thomas testified that he joined a Shreveport street gang, the Rolling 60s Crips, when he was about 15.  Fellow members included Petitioner, co-defendant Bobby Wallace, and some of their cousins.  Thomas has an extensive record of misdemeanor convictions for assault, battery, theft, and the like, as well as some felonies that resulted in prison time.  Thomas testified at trial that he was then 35, had completed parole, and had left the gang lifestyle after getting out of prison.  He was working at a local hospital.  He nonetheless remained acquainted with many gang members.

Bad blood had developed between Thomas and certain gang members when he refused to "take a charge" for Stevie Young, who is a first cousin of Petitioner and co-defendant Bobby Wallace. Thomas said that Stevie Young received a 24-year federal sentence, and his cousins were not happy about it.

Thomas, his girlfriend, and her two-year old daughter went to a convenience store in Shreveport, where they encountered Greg Young.  Thomas and Young had an argument. As Thomas and his guests later drove down David Raines Road, several gunshots hit his SUV.  Bullets broke a window and flattened two tires, but no person was hit.  Thomas told police the names of three shooters:  Petitioner, Bobby Wallace, and Greg Young. Thomas also told police that the men lived on Hattie Street.  Thomas testified at trial that he saw Petitioner with a handgun pointing at the SUV and firing.  He said there was "[n]o doubt in my mind" that Petitioner was one of the men shooting at him, and he saw a handgun in

Petitioner's hand.  Bobby Wallace and Greg Young were also firing handguns.  At one time, he told police that Calvin Elie had also been a shooter.

The police soon executed a search warrant for the Hattie Street house.  They found Petitioner and four others inside.  Police recovered a plastic baggy of 31 grams of powder cocaine from under the cushions of the couch in the front room.  There were no fingerprints on the baggy.  A kitchen cabinet contained small sandwich bags, an open box of baking soda, and a Glock .40-caliber handgun.  A firearms expert testified that the spent casings found at the scene of the shooting were fired from that handgun.   An SKS rifle was found in a car parked at the house.  The car was registered to someone from Texas.

Police found in the kitchen a digital scale of a type commonly used for weighing drugs for resale.  Bobby Wallace's fingerprint was on the scale.  Three agents testified that they overheard Petitioner and Wallace tell Kendra Young to take the charge by claiming that the drugs and gun belonged to her.  Ms. Young initially told police that everything belonged to her, but when cautioned that other crimes may go along with ownership of the gun, she changed her story to say that the items belonged to Calvin Elie.

Police found Calvin Elie hiding in a closet.  He pleaded guilty to possession of cocaine and received probation on the condition that he testify truthfully.  He testified that he did not live at the residence but had been asleep in the back bedroom and jumped in a closet when he heard the police enter the house.  He denied knowledge of the cocaine found on the sofa.  Petitioner and his co-defendant Bobby Wallace testified that Elie was a drug addict who was staying at the house and slept on the sofa where the drugs were found.

Petitioner, who admitted convictions for possession of crack and indecent behavior with a juvenile, testified that he lived at the Hattie Street house with Kendra Young (his sister), her children, and Calvin Elie.  He denied ever being in a gang.  He said that he was home with his sister when he heard the shooting, and he was asleep in the back of the house when police later executed the search warrant.  Elie was asleep on the couch when the police arrived, but he ran down the hall and hid in a closet.  Petitioner and Bobby Wallace testified that Elie was a drug addict who stayed at the house because his family had run him off because of his drug problem.  Petitioner denied knowing anything about the Glock, the drugs, or the scale found in his house.  He was asked whether he asked his sister to take the charges for the drugs and gun.  He said, "I can't recall."  He said the car in the driveway belonged to a friend from Texas, and it had been there for six or eight weeks after breaking down.

Marquae Wallace, a younger cousin to the defendants, testified that he met Elie the day before the warrant was executed.  Elie had a bag of powder cocaine, which was the same bag later seized from the house.  Marquae said that he got the scales from a "fiend on the street," planned to sell them, and left them on the kitchen counter at the Hattie Street house.

**B. Elements of the Crimes**

Petitioner was convicted of possession of cocaine.  The State was required to prove that he was in possession of the illegal drug and that he knowingly possessed it.  The State did not have to prove actual physical possession.  Constructive possession is sufficient to

support a conviction under state law.  State v. Foster, 3 So.3d 595, 600-01 (La. App. 2d Cir. 2009).

Constructive possession means having a relationship with an object such that it is subject to one's dominion and control, with knowledge of its presence.  Louisiana courts look to several factors in determining whether a defendant exercised sufficient control and dominion to establish constructive possession.  They include (1) his knowledge that drugs were in the area, (2) his relationship with the person, if any, found to be in actual possession, (3) his access to the area where the drugs were found, (4) evidence of recent drug consumption, and (5) his physical proximity to drugs.  State v. Major, 888 So.2d 798, 802 (La. 2004).  Giving a false name or other efforts to attempt to avoid blame indicate consciousness of guilt and is a circumstance from which a jury may infer guilt.  State v. Toups, 833 So.2d 910, 914 (La. 2002).

Petitioner was also convicted of illegal use of a weapon.  Louisiana law defines that crime as "the intentional or criminally negligent discharging of any firearm…where it is foreseeable that it may result in death or great bodily harm to a human being."  La. R.S. 14:94.

### C. Jackson and Section 2254(d)

Petitioner argues that the evidence was not sufficient to prove his guilt under applicable state law.  In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979).  The Jackson

inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993).

The state courts decided the Jackson claim on the merits on direct appeal. Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus, a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas review unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews, 132 S.Ct. 2148, 2152 (2012); Harrell v. Cain, 595 Fed. Appx. 439 (5th Cir. 2015).

**D. Analysis**

The state appellate court reviewed the evidence in detail. It noted that the jury was faced with an array of often contradictory testimony about the relevant factors. The bag of drugs did not bear any fingerprints, but it was under a couch in the main room of Petitioner's residence, where it was easily accessible by anyone. There was testimony that Calvin Elie was sleeping on the couch when police arrived, but he denied being there. The court reasoned that the jury, who saw Mr. Elie testify, could have concluded that it was unlikely that the seldom employed and homeless Elie was the only person with a

connection to a rather significant (and therefore expensive) quantity of cocaine.  There was also the evidence that Petitioner asked Kendra Young to "take the charges," which was suggestive of guilt on his part.

With respect to the weapon conviction, the appellate court observed that the jury saw photos of the shot-up SUV that had been hit with "a fusillade of bullets."  The .40–caliber Glock handgun retrieved from Petitioner's house was proved to be the weapon that fired shell casings left behind at the scene of the shooting.  The victim, Mr. Thomas, testified that he had no doubt that Petitioner was one of the shooters and was firing a handgun.  Petitioner argues that Thomas was inconsistent because he told authorities that two, then three, then four men were shooting at him, but the casings found at the scene matched only a single weapon.

The state court applied the Jackson standard to these facts and determined that, when the evidence was viewed in the light most favorable to the prosecution, the evidence was sufficient to prove beyond a reasonable doubt that Petitioner was in constructive possession of the cocaine. The case was not a slam dunk for the prosecution, but there was evidence that Petitioner and other members of the household were involved in a shooting, and his cousin's fingerprint was on a scale located near drug paraphernalia.  This and the other relevant facts were sufficient that the state court's application of Jackson to affirm the conviction was not an objectively unreasonable application of that standard.  Reasonable minds could perhaps differ on whether the evidence was sufficient when Jackson was applied on direct appeal, but once that decision was made by the state court, it was adequate to withstand doubly deferential habeas review.

With respect to the weapons conviction, it was rational to conclude that there was no reasonable doubt as to Petitioner's guilt if the jury accepted the testimony of Mr. Thomas as credible. Thomas testified that he had no doubt that he saw Petitioner firing a handgun at him. Petitioner attacks that testimony based on alleged inconsistencies, but inconsistencies did not prohibit the jury from believing Thomas. Such credibility determinations are squarely within the province of the trier of fact. "[U]nder Jackson, the assessment of the credibility of the witnesses is generally beyond the scope of review." Schlup v. Delo, 115 S.Ct. 851, 868 (1995). "All credibility choices and conflicting inferences are to be resolved in favor of the verdict." Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005). When those standards are applied, there is no basis for setting aside the weapon conviction on habeas review for sufficiency of the evidence.

**Lack of Written Reasons for Sentence**

Petitioner argues that the trial court failed to comply with La. R.S. 15:529.1(D)(3), which requires that in a multiple offender hearing "[t]he court shall provide written reasons for its determination." Petitioner raised this claim on direct appeal. State courts often find such an omission harmless if the transcript of the hearing showed sufficient evidence and oral reasons were transcribed. State v. Papillion, 63 So. 3d 414, 425 (La. App. 3 Cir. 2011); State v. James, 938 So. 2d 1191, 1197 (La. App. 2 Cir. 2006). The appellate court found in this case that the error was harmless because the transcript showed clear oral reasons. State v. Wallace, 71 So.3d at 1153.

This claim is based solely on state law so lacks habeas merit.  A claim that the trial court improperly applied state law does not constitute an independent basis for federal habeas relief.  Estelle v. McGuire, 112 S.Ct. 475, 479-80 (1991).  And the Fifth Circuit has rejected habeas challenges to a state court's failure to comply with similar state law sentencing procedural rules.  Haynes v. Butler, 825 F.2d 921, 924 (5th Cir. 1987); Butler v. Cain, 327 Fed. Appx. 455 (5th Cir. 2009).

**No Sentencing Delay**

Petitioner argued that the trial court erred by sentencing him without observing a 24-hour delay required by La. C.Cr.P. art.  873.  Petitioner raised this claim on direct appeal.  The appellate court found that the error was harmless because there was no prejudice shown.  State v. Wallace, 71 So.3d at 1153-54.  This claim relies solely on state law, so it lacks habeas merit for the reasons explained in the preceding section.

**Bill of Information**

Petitioner was charged by a bill of information, which was later amended.  He was also charged by another bill of information under a separate docket number.  The details of the charging instruments and the amendments are set forth in the State's memorandum (Doc. 35, n. 11).  Petitioner complained on post-conviction application that the amendment process resulted in the lack of a viable charge against him for the weapons count.  The trial court stated that the "first claim of defective bill is without merit and therefore said claim is denied."  Tr. 1286.  The appellate court summarily denied a writ application "on the showing made."  Tr. 1421.  The Supreme Court of Louisiana denied a writ application and

stated: "On the showing made, relator fails to demonstrate prejudice resulting from any defect in the bill of information."  Tr. 1578.

The sufficiency of a state indictment or bill of information is not a matter for federal habeas corpus relief unless it can be shown that the charging instrument "is so defective that the convicting court had no jurisdiction."  Morlett v. Lynaugh, 851 F.2d 1521, 1523 (5th Cir. 1988).  State law is the reference for determining sufficiency and if the issue "is presented to the highest state court of appeals, then consideration of the question is foreclosed in federal habeas corpus proceedings."  Morlett, supra.  See also Wood v. Quarterman, 503 F.3d 408, 412 (5th Cir. 2007); McKay v. Collins, 12 F.3d 66, 68-69 (5th Cir. 1994).

The charging instrument in this case was presented to the state's highest court, which found no error, so there is no basis for habeas relief with respect to this issue. Petitioner makes a vague assertion that the amendment process violated his federal due process rights, but he does not point to any clearly established federal law as decided by the Supreme Court that would undermine the state court's rejection of this claim.  See 28 U.S.C. § 2254(d)(1).

**Ineffective Assistance of Counsel**

### A. Introduction; Burden

Petitioner argues that his attorney rendered ineffective assistance in several ways. To prevail on such a claim, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed

reasonably, there is a reasonable probability that the result in his case would have been different.  Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

Petitioner's ineffective assistance claims were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determinations under the Strickland standard were incorrect but whether the determinations were unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007).  The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it.  The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009).

### B.  No Motion to Continue

Petitioner argued in his post-conviction application that counsel was ineffective for not requesting a continuance—after the prosecutor amended the bill of information to include the weapon charge—because counsel was unprepared to provide a proper defense to the weapon charge.  The State explains that there was no surprise because a bill filed in a related case number had charged Petitioner with the weapons count months before the trial.  Both the drug and weapons charges were read at the commencement of the trial, and experienced trial counsel voiced no surprise or objection.  Tr. 475-76.

The trial court summarily denied the post-conviction claim on the grounds that Petitioner did not meet his burden under Strickland.  Tr. 1286.  The appellate court denied the application on the showing made, citing Strickland.  Tr. 1421.  The Supreme Court of Louisiana denied a writ and stated that Petitioner "has not established that he received

ineffective assistance of counsel under the standard set forth in Strickland[.]"  Tr. 1578. Petitioner's argument that counsel was surprised by the weapons charge is not supported by the record, so there is no basis to find that the state court's application of Strickland to this claim was objectively unreasonable.

### C. Failure to Challenge Search Warrant

Detective Lane Smith applied for a warrant to search the home at 2997 Hattie Street for a .40 caliber handgun and ammunition.  His affidavit in support of the warrant application stated that officers met with Marcus Thomas, who reported being shot at by three known suspects.  Thomas named two of the men, including Petitioner, and said that he knew the third suspect but could not recall his full name at the time.  Officers went to the scene of the shooting, found .40 caliber spent shell casings on the sidewalk, and they saw that Thomas' vehicle had been struck by several shots.  Detective Smith recounted that he conducted a detailed interview with Thomas a few days later, where Thomas named all three suspects.  Thomas said that he had known the three men all of his life, and he identified photographs of them.  Thomas told Smith that the suspects believed that Thomas had cooperated with the police in another case.  Thomas said the suspects ran to 2997 Hattie after firing the shots, and he said Petitioner and another of the suspects then lived at or frequented the Hattie Street address.  Thomas said that a source told him that the two men had .40 caliber handguns.  The officers had Thomas physically point to the Hattie Street home, which they then verified had water service billed to a Kendra Young, who Thomas said was the sister of one of the suspects.  Based on that affidavit, a state court judge signed a warrant to search the home for a .40 caliber handgun and ammunition.  Tr. 51-53.

Petitioner argues that his defense counsel was ineffective because he did not file a motion to suppress the results of the search on the grounds that the affidavit contained false statements and did not give rise to probable cause. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 106 S.Ct. 2574, 2583 (1986); Shed v. Thompson, 2007 WL 2711022, *5 (W.D. La. 2007). This is a habeas challenge under Section 2254(d)(1), so the Petitioner must establish not only that suppression of the evidence would be the correct result, but also that it would be contrary to or an unreasonable application of clearly established federal law for the state habeas court to rule otherwise. Evans v. Davis, 875 F.3d 210, 219 (5th Cir. 2017), cert. denied, 139 S. Ct. 78, 202 L. Ed. 2d 52 (2018).

The affidavit used to support the search warrant is presumed valid. Franks v. Delaware, 98 S.Ct. 2674 (1978). The veracity of the affidavit may only be attacked upon a showing of deliberate falsehood or reckless disregard for the truth by the affiant. Id. If an accused establishes by a preponderance of the evidence that false information was intentionally or recklessly included in an affidavit, the court must excise the offensive language and determine whether the remaining portion would have established the necessary probable cause. U.S. v. Danhach, 815 F.3d 228, 235 (5th Cir. 2016), citing Franks.

Petitioner presented this claim in his post-conviction application. Tr. 1203-07. He argued that the affidavit did not establish probable cause because it did not demonstrate that evidence of a crime or contraband would be found in the home. He complained that Marcus Thomas told the detective that an unnamed source said that Wallace and Petitioner carried .40 caliber handguns, but the police had no "physical evidence" that Petitioner and Wallace lived at the Hattie Street address. Petitioner also complained that the affidavit was not supported by any personal observation of weapons at the address. The state courts, in the rulings cited above, summarily denied the Strickland claims asserted in the post-conviction application.

Petitioner's claim is subject to the deferential standards of Section 2254(d). Under that standard, it is not enough for the state court to have been incorrect in its application of state law or determination of facts; it must also have been unreasonable. Coble v. Quarterman, 496 F.3d 430, 435 (5th Cir. 2007). And "Section 2254(d) applies even where there has been a summary denial." Cullen v. Pinholster, 131 S.Ct. 1388, 1402 (2011). A petitioner who challenges a state court's summary denial may meet his burden under the first prong of Section 2254(d) only by showing that there was "no reasonable basis" for the state court's decision. The federal habeas court must determine what arguments or theories could have supported the summary decision, and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. Pinholster, 131 S.Ct. at 1402, citing Harrington v. Richter, 131 S.Ct. 770, 786 (2011).

Petitioner has not met his burden.  The affidavit by Detective Smith was detailed and noted variations or uncertainties in the information obtained from the witness.  There is no indication that Detective Smith set forth any deliberate falsehoods or acted with reckless disregard for the truth.  Petitioner's various arguments about why Mr. Thomas was an unreliable or inadequate witness do not make Detective Smith's testimony false.  Petitioner has not shown that he had a meritorious Fourth Amendment claim that would have resulted in the suppression of the evidence seized pursuant to the warrant.  Moreover, he has not demonstrated that the state courts' rejection of this claim was an objectively unreasonable application of Strickland or Kimmelman.

### D.  Failure to Exclude Evidence

The search warrant issued for the Hattie Street house allowed police to search for certain property described as .40 caliber handgun and .40 caliber ammunition.  Tr. 53.  Petitioner argues that the testimony at trial showed that the officers quickly located a handgun and ammunition, but they then continued their search and recovered a scale and cocaine.  Petitioner argues that counsel should have moved to exclude the later found evidence from use at trial.

The police were not required to immediately end the search once a single weapon and some ammunition were recovered.  They had been told that there were multiple shooters and that two men in the home had such weapons.  Police were entitled to continue the search until they recovered all such weapons and ammunition, together with any items that they encountered in plain view during the course of that search.  Counsel would have lacked legal authority to obtain the exclusion of the evidence, and Petitioner has not cited

any decisions that would support his argument.  Counsel was not ineffective in this regard because he was "not required to make futile motions or objections."  Garcia v. Stephens, 793 F.3d 513, 525 (5th Cir. 2015), quoting Koch v. Puckett, 907 F.2d 524, 527 (5th Cir.1990).  The state court's denial of this claim was not an objectively unreasonable application of Strickland.

### E.  No Objection to Marijuana Reference

Agent Denham was asked to identify a photograph.  He said it "looks like a black scale and a small amount of suspected marijuana on it."  Tr. 661.  Defense counsel objected that his clients were not on trial for marijuana, so the references to that substance had no probative value.  The prosecutor responded that all defendants were arrested for the misdemeanor possession of marijuana, but the misdemeanor could not be tried in the jury trial for the felony charges.  He argued that the discovery of the marijuana was part of the res gestae and that having other drugs in the house was indicative of knowing or intentional possession of the cocaine.  The trial judge sustained the objection.  Tr. 662-67.

The next witness was Agent Troy Skeesick.  He was asked about some keys he found in the house.  He answered, "Yes.  I actually found some keys on that shelf along with a small amount of marijuana."  Counsel objected and asked that the prosecutor instruct all future witnesses not to mention the marijuana.  The court observed that Skeesick had not been present when the earlier ruling was made, nor had the prosecutor had enough time to instruct the witnesses not to mention the marijuana.  Furthermore, Skeesick's response was not directly responsive to the prosecutor's question.  The court asked counsel if he

wished the court to admonish the jury on the issue.  Counsel elected to move on rather than emphasize the marijuana further.  Tr. 670-78.

Defense counsel later questioned Petitioner and his co-defendant about their knowledge of the "drugs" found in the house.  Both denied knowledge of drugs in the home.  Tr. 747, 779.  When the prosecutor cross-examined Petitioner about his knowledge of drug activity in the house, he first asked him if he knew about cocaine underneath the sofa cushion.  The prosecutor then asked whether he knew "about any marijuana in the house."  Tr. 759-60.  The prosecutor cross-examined co-defendant Wallace about the coincidence of his print being on a scale that was found by the keys to the vehicle in which an assault rifle was found, as well as beside the .40 caliber Glock used in the shooting.  The prosecutor mentioned in that question that the keys and the pistol were "also where the marijuana and the scales were" in a cabinet.  Tr. 804.  Defense counsel did not object to those questions.

Petitioner seeks to have his conviction thrown out on habeas review because counsel did not raise those additional objections.  "It is oft-recognized that the decision not to seek a mistrial is frequently a strategic one."  Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008).  Counsel must balance the harm caused by the prosecutor's improper question against the possibility that a new trial would present worse prospects for his client.  Id., citing Ward v. Dretke, 420 F.3d 479, 491 (5th Cir. 2005).  The same principles apply to decisions whether to object or seek admonishments or cautionary instructions.  Counsel often make a strategic decision to let some matters go rather than draw additional attention to them.

The state court's decision to deny relief on this <u>Strickland</u> claim was within the realm of a reasonable application of <u>Strickland</u> to the facts.  Counsel fought hard to keep out evidence of the marijuana, and he largely succeeded once his objections were made. He did not object to the later minor references, but that may have been a matter of strategy or an implied recognition that he had opened the door by having his clients deny knowledge of "drugs" in the house.  There is also no reasonable likelihood that the verdict would have been different had counsel raised an objection to the marijuana questions.  There were only a few such references, and they were largely insignificant among the extensive questions about cocaine, which questions were fair game.  Habeas relief is not permitted on this claim.

### F.  No Motion to Quash Multiple Offender Bill

Louisiana law allows a sentence for a current conviction to be enhanced if the defendant is adjudicated a multiple offender.  The State charged Petitioner with being a third felony offender, and that status was used to impose an enhanced sentence.  One of the prior convictions used to obtain multiple offender status was a 2003 conviction for possession of schedule II CDS.  Petitioner argues that his counsel was ineffective because he did not file a motion to quash the multiple offender bill on the grounds that (1) the bill of information that charged the 2003 drug offense did not specify the quantity of drugs at issue and (2) the court did not inform Petitioner when he entered the 2003 plea that the conviction could be used against him later to enhance a sentence.

Louisiana law provides that if a defendant denies the allegations in a multiple offender bill, the burden is on the State to prove the existence of the prior guilty pleas and

that the defendant was represented by counsel when the pleas were entered. If the State meets that burden, the defendant has the burden to produce affirmative evidence of an infringement of his rights or a procedural irregularity in the taking of his plea. If he does that, the burden of proving the constitutionality of the former plea shifts to the State. It can meet its burden with a transcript or other records to show that the defendant was informed of and waived his right to trial by jury, his privilege against self-incrimination, and his right to confront witnesses. The ultimate issue is whether the State has met its burden of proving that the prior guilty plea was informed and voluntary and was made with a waiver of the three Boykin rights. State v. Shelton, 621 So.2d 769 (La. 1993).

The State in this case submitted court records regarding the prior convictions, and an expert witness testified that Petitioner's fingerprints established that he was the same person previously convicted. Defense counsel did not offer any objection. Tr. 979-990.

The version of the statute under which the prior drug conviction was obtained, La. R.S. 40:967, allowed a conviction for possession of any amount of certain substances. It allowed increased penalties if the State proved possession of greater amounts. The bill (Tr. 145) that charged Petitioner did not charge that he possessed any particular amount. The minutes show that Petitioner appeared with counsel and entered a plea after being informed of his Boykin rights, and then he was sentenced to three years. That sentence was within the range of the lowest sentencing category (not more than five years) under the applicable version of the statute, so the lack of quantity in the charging instrument was irrelevant. Counsel could not be ineffective for failing to move to quash the multiple offender

indictment on this ground.  It lacked merit at the time of the original conviction, and there was no basis under Shelton to discount the prior conviction.

Petitioner argues that counsel should have quashed the bill because he was not warned when he entered his 2003 plea that the conviction could be used to enhance future sentences.  Petitioner has not cited any authority that (1) requires such a warning at the time a plea is entered or (2 prohibits the use of the conviction for future enhancements if such a warning is not given.  Absent such authority, counsel had no basis to file a motion to quash.  The state court's denial of this Strickland claim was reasonable, so habeas relief is not permitted under the doubly deferential standard of review.

Petitioner makes a related argument that appellate counsel was ineffective for not requesting an errors patent review that could have led to relief with respect to these issues.  This claim lacks merit because the underlying issues are meritless and because "all appeals are routinely reviewed for errors patent on the face of the record."  State v. Kelly, 195 So.3d 449, 453 (La. 2016).

### G. Failure to Note Race and Gender of Jurors

The record includes a transcript of the voir dire that took place over two days.  Tr. 239-471.  Both sides used peremptory strikes, and the discussions regarding the strikes and challenges for cause were transcribed on the record.  Petitioner argues that defense counsel was ineffective because he did not ensure that the record stated the race and gender of all prospective jurors and then lodge (unspecified) Batson objections.

The record often contains a recitation by the trial judge or a written document that sets forth the race and gender of the jury venire.  The State does not point to any such

evidence in this record.  However, Petitioner offers only a conclusory assertion that a valid Batson objection could have been raised.  Defense counsel Larry English, who is African American, does not have a reputation as one who would have been shy about raising such an objection.  Had that happened, it is certain that the race or gender of the relevant jurors would have been mentioned.  But no objection was made, so the record was not completed in that regard.  Petitioner's conclusory assertion that a Batson claim could be raised had counsel noted the race and gender of jurors is speculative and conclusory.  This court cannot say that the state court was objectively unreasonable when it rejected this Strickland claim.

The State also raises a lack of exhaustion/procedural bar defense based on Petitioner's alleged failure to present this claim to the state appellate or supreme courts.  The defense need not be addressed in light of the recommended denial for lack of merit.

### H. Bench Conferences

The Supreme Court of Louisiana has held that, as a matter of state criminal procedural law, bench conferences are a material part of the proceedings.  If there are potential grounds to appeal based on how challenges were ruled upon at the bench, the absence of a transcript or other contemporaneous records to account for the selection process requires reversal.  State v. Pinion, 968 So.2d 131 (La. 2007).  Petitioner argues that Pinion and related state rules and statutes were violated when there were at least 13 unrecorded bench conferences during the course of his trial.  He argues that he has no way of reviewing what was said, so he was unable to assign as error any unfavorable rulings made during those bench conferences.

This court may not grant habeas relief based on violations of <u>Pinion</u> or other state law.  Federal habeas corpus relief is available only for errors of federal constitutional law.  <u>Estelle v. McGuire</u>, 112 S.Ct. 475 (1991).  Furthermore, the Supreme Court has not required the State to provide a full transcript based on mere request.  <u>Draper v. State of Washington</u>, 83 S.Ct. 774 (1963).  Only those parts that are germane to consideration of an appeal must be provided.  This means a defendant must allege a specific error that can be uncovered through production of portions of the voir dire transcript not included in the record.  The State is not required to provide complete transcripts so that a defendant may conduct a fishing expedition to seek out possible errors for appeal.  <u>Johnson v. Cooper</u>, 2013 WL 4548526, *7 (E.D. La. 2013), citing <u>Kunkle v. Dretke</u>, 352 F.3d 980, 985-86 (5th Cir. 2003).

Petitioner has not articulated any particular appellate issue that could have been fleshed out by obtaining a transcript of a bench conference.  He has not pointed to any places in the record that suggest any actual rulings were made at such conferences.  Habeas relief is not available on this claim.  This court has previously rejected similar claims.  <u>See</u>, e.g., <u>Hedgespeth v. Warden</u>, 2015 WL 1089325, *6 (W.D. La. 2015); <u>Greer v. Warden</u>, 2014 WL 4387295, *9 (W.D. La. 2014).

## I. Special Response Team

Two of the officers involved in the search testified about the use of a Special Response Team ("SRT") to enter the home.  Petitioner argues that counsel was ineffective for failing to object to this testimony, the trial court erred in admitting the evidence, and there was related prosecutorial misconduct.  All of the claims lack merit.

Agent David Recchia with the Shreveport Police Department testified that he is involved in narcotics investigations and was assisting the narcotics unit serve a search warrant on the Hattie Street home.  Recchia said that detectives "had information that there was narcotics within that residence," so they "made entry using an SRT team to make a forceful entry to the residence."  Tr. 642-43.  The prosecutor asked about the purpose of the SRT.  Recchia explained that many times drug operations are associated with a "chance for, propensity for violence."  He said, "There are usually guns involved with dope."  The team is "vested up" and uses heavy gear to make entry and secure the residence.  Once the SRT has cleared the house, they allow the investigators to enter and conduct the search and interviews.  Recchia said this form of entry was both for the safety of officers as well as to prevent destruction of evidence.  Tr. 643-44.

Agent Chad Denham testified that he also served on the SRT or SWAT team. Denham said he was assigned to the entry team for the search of the Hattie Street home. There were 16 members of the SRT, dressed in vests, helmets, masks, and armed with "very big guns" and a ballistic shield.  Tr. 649-52.

Defense counsel Larry English did not object to Agent Recchia's testimony, but he did object at this point during Agent Denham's testimony that the description was not relevant to whether the drugs and guns found in the home were possessed by the two defendants.  The prosecutor responded that he thought it was important knowledge for the jurors to have, and the court summarily overruled English's objection.  The testimony regarding the ballistic shield, the caliber of the police weapons, the use of a distraction device, and other matters were described.  Tr. 652-56.

Petitioner argues that counsel was ineffective for not objecting, but counsel did eventually object and was overruled.  The court cannot find counsel ineffective merely because he did not succeed on his objection.  Bustos v. Quarterman, 2007 WL 701028, *5 (W.D. Tex. 2007) ("The mere fact that counsel did not prevail on his motion to suppress does not render his performance deficient.").

Petitioner argues that the trial judge erred in allowing the testimony.  A federal court may grant habeas relief based on an erroneous state court evidentiary ruling only if the ruling violates a specific federal constitutional right or is so egregious such that it renders the petitioner's trial fundamentally unfair.  Brown v. Epps, 686 F.3d 281, 286 n. 20 (5th Cir. 2012); Wilkerson v. Cain, 233 F.3d 886, 890 (5th Cir. 2000).  The evidence at issue was of questionable relevance, but its admission was not so unfair as to meet the heavy burden required for habeas relief.

Finally, Petitioner argues that the prosecutor engaged in misconduct by pursuing this line of evidence.  Claims of prosecutorial misconduct do not provide a basis for habeas relief unless the prosecutor's actions or argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 106 S.Ct. 2464, 2471 (1986).  The petitioner must also demonstrate prejudice by showing that the misconduct was so persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks. Geiger v. Cain, 540 F.3d 303, 308 (5th Cir. 2008); Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988).  The questions at issue were not an important part of the state's prosecution, and there was no argument that the testimony about the SRT entry supported a finding of

guilt.  There is little reason to believe that the verdict would have been different had this testimony not been presented.  Accordingly, the state court's denial of this claim was not an objectively unreasonable application of clearly established federal law.

### J.  Jury Instruction on Accomplice Testimony

Calvin Elie, who was arrested in the house, entered a guilty plea, received probation, and agreed to testify truthfully at this trial.  Mr. Elie testified that he did not live at 2997 Hattie Street; he lived with his grandmother at another house on the street.  Elie denied that he used drugs and said that he had come over to the house only a couple of hours before the raid.  He denied possessing the drugs that were found, but he admitted that he entered a plea of guilty after spending over ten months in jail.  Elie denied any involvement in the shooting, and he said he did not know whether the persons in the Hattie Street house were involved in drugs.  He did say that he heard Petitioner mention that he needed to get a Reggie.  Elie explained that a Reggie was 31 grams of cocaine, a reference to the jersey number of former NBA player Reggie Miller.  But Elie did not offer any testimony that directly implicated Petitioner as a possessor of the drugs that were found.  Tr. 621-42.

In Louisiana, a conviction may be sustained on the uncorroborated testimony of an accomplice, although the jury should be instructed to treat such testimony with great caution.  State v. Hollins, 15 So.3d 69, 71 (La. 2009).  A cautionary accomplice instruction is not required if there is material corroboration of the accomplice's testimony.  Id. at 71-72.  Petitioner argues that his attorney was ineffective because he did not request such an instruction.

The state court acted reasonably in denying this claim.  There was nothing in Elie's testimony that directly incriminated Petitioner as possessing the cocaine that was found in the house.  Rather, he said that he did not know whether the people in the house were involved in drugs.  Elie did testify that he heard Petitioner say that he needed to get a Reggie, but Elie said Petitioner added, "I'm just playing, man, you know, I ain't got no money."  Accordingly, there was little reason for defense counsel to ask for an instruction that Elie's testimony be treated with caution.  It just wasn't very damaging.

The mere absence of a request for a jury instruction does not overcome the strong presumption that counsel made all significant decisions in the exercise of reasonable professional judgment.  Thomas v. Vannoy, 651 Fed. Appx. 298, 303 (5th Cir. 2016).  There is no reason to believe that the verdict might have been different had counsel requested such an instruction.  This claim lacks merit.

Accordingly,

It is recommended that Petitioner's Petition for Writ of Habeas Corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 11th day of February, 2019.

Mark L. Hornsby
U.S. Magistrate Judge